Case 15-1449 HDV Greektown LLC et al. v. City of Detroit et al. Oral argument, 15 minutes per side. Mr. Schaefer for the appellants. May it please the court, Brad Schaefer appearing on behalf of the appellants. I have reserved one minute for rebuttal, Your Honor. This appeal is unique, to say the least, in a number of regards, none the least of which is that, unlike a normal attorney fee appeal, this is not an appeal from the judge who actually handled the case. It's an appeal from a magistrate's ruling, a report of recommendation, and a decision of Judge Tarnow, neither of which participated in the merits portion of this case. Judge Cook retired without taking senior status. Judge Cook had a lot of familiarity with this case, the other two did not. In fact, Judge Tarnow did not even grant oral argument in regard to my objections to the report and recommendation. I never appeared in front of Judge Tarnow. I do not know what my clients and I did to justify the vitriol in Judge Tarnow's opinion, but that's neither here nor there. We have cited extensively the case law in this circuit concerning the fact that when a prevailing party receives excellent results, they are entitled to a full compensation of their attorney fees. And, Your Honors, the one case that I would cite to you is the Deja Vu Nashville case, which was an attorney fee award to me and my clients, a published decision. That was a case that when the matter came to this court after eight years of litigation, we are now in this case year 13 and counting, eight years this court was faced with an attorney fee request of $536,000 at that time, and the court granted a full compensation in that matter. And this is what this court said in this case, this is on page 423, when the Metropolitan Government of Nashville and Davidson County was making the argument that, well, I hadn't prevailed on every single solitary issue. Metro has presented no basis for any such finding here, prevailing parties who obtain excellent results, hyphen, as Deja Vu surely did here, and repeatedly so, are generally entitled to a fully compensatory fee. Mr. Schaffer, I think the troubling thing for me about your request is that it just seems that everything was done. So many lawyers involved, so much volume. We've got folks who are really familiar, who are experts, so-called, in the law in this area. So why should it have cost that much to handle these actions? Well, Your Honor, first of all, we have a matter that went over a number of years. We have the fact that even in regard to that billing, I redacted billing from attorneys talking to one another that this court in the Glover case has said is in fact fully compensable. You talk about what we did with regard to Judge Cook on the first motion for summary judgment. He still didn't give the relief that we wanted. We had to repair it at this court, and I had to get a 3-0 decision from this court to order him to grant the relief. He then didn't even grant the appropriate relief. I had to file a motion for reconsideration. Then he finally granted the relief of that. I understand that, and certainly that kind of back and forth would drive up the fees. But, for example, one particular claim that's, I don't know, I don't remember how I came to realize this, but 500 hours for the partial summary judgment motion that was filed, I think, kind of early on, and the 100-page-plus complaints, you know, I mean, it just looks like everything was kind of over-lawyered. Your Honor, I have to deal with the case law of this circuit, okay? And so if you take a look at the, for example, the Sensations v. City of Grand Rapids case, which is a decision where this court says, once a litigant like me puts an ordinance into the record as part of the complaint that deals with secondary effects, that because we cannot get discovery on the secondary effects issue because of a ruling of this court in my Deja Vu Nashville case, that can be 12B6'd out right there, that that litigant doesn't even get an opportunity to litigate the case. In regard to the length of the complaint, not only did I have to deal with that, as we also pointed out in our briefing, Your Honor, these were verified complaints. We had a number of different complaints here, at least four that I can think of, because things were added as things developed. We didn't want to bring in the Conyers and Riddle, you know, we've discussed that. We didn't want to bring in the Conyers and Riddle bribe solicitation until that was absolutely necessary. And all of that was the result of we had to get relief from the court. And it was pretty clear, if you take a look at the record, that even given what you say we did and the hours that we did them, and I do not remember any 500 hours on a motion. What I recall is they put a chart together that said something like 282 hours on one task, and then if you read all of the entries in there, you'll see that most of those entries have nothing to do with that matter. That's the one that I recall. But we did what we had to do to win for our clients, and we had to come here. I do not question that it was a hard road and that there were many, many steps. I mean, obviously I wasn't Judge Cook either, but in preparing for this case, I mean, it was obvious that you had to make a great deal of effort to achieve, with many, many steps along the way, to achieve the result you did. We did. And as I pointed out to Judge Cook in our very first status council, and I put together in the briefing, this case had to be built on building blocks. I could not go to step three in regard to the procedures that the city council, the illegal procedures that the city council enacted to try to stop the transfer. I had to first go to the zoning matter. And, Your Honor, when you talk about whether this was an easy case and why we had to put in the hours, the city of Detroit's defense to our first motion was very simple. The seminal United States Supreme Court decision on adult zoning was the city of Detroit's zoning ordinance, which I was attacking. They pointed that out to Judge Cook time after time. The United States Supreme Court has upheld the city of Detroit's zoning ordinance, but I got it declared permanently unconstitutional, or I got it permanently enjoined as being unconstitutional, Your Honor. The report and recommendation was by Magistrate Judge Whalen. Was he the magistrate judge all along in this case? No, there was no magistrate judge, Your Honor. Judge Cook was a judge that handled his matters the same. Every hearing we had up until the day before trial was in front of Judge Cook. But Judge Whalen did the R&R, right? He did the R&R. And Judge Tarnow essentially adopted the R&R that Judge Whalen did. He adopted the numbers. He has slightly different analyses as to why that is. We pointed out his comment that these are not important constitutional rights, which under the bit and a bee decision of this court is not an appropriate basis. He pointed out that my clients were wealthy business people without having any evidence in front of them, which the opinion, Judge Gibbons, you wrote in the Lavin case is not an appropriate basis. And, in fact, in Lavin this court ordered that upon remand that it be reassigned to another judge because of those comments. So he came up with the same number, but, you know, I... Well, and his rationale is the same pretty much, isn't it? The key thing that seems to me to be of concern is the reduction by 60% of the fees. And both the magistrate judge and the district judge are doing that, correct? Correct. And your argument is there should be no reduction. But if there were to be a reduction, what kind of... what is the problem with this amount that the reduction is, other than the... The 60%? Other than the size. Well, Your Honor, that's the third reduction, okay? The first reduction is I already cut the fees by 10%. Then the magistrate takes out the first iteration of the case. He takes out the full $16,200 with regard to the conures and riddle matter. If you go to the chart concerning that, that's the reduction that they asked for, $16,200. That's what he reduced it by. Then he uses the zoning matter to reduce it basically 60%. It's not the zoning matter that reduces it 60%, is it? That's what he uses as a partial basis for that, yes. He does. And, Your Honor, let's take a look at this. Correct me, again, because obviously we're having a communications issue here. I thought that the magistrate judge took out certain things, like the conures riddle matter and the zoning matter and the pre-a certain date matter, which for some reason I'm thinking is like 2000. Your Honor. And then comes up with a number and then reduces it by 60%. Am I correct? Correct. But what I'm telling you is I believe, if you go back and look at the report and recommendation, he uses the zoning matter to partially justify the 60% reduction. So that's not a good reason, you're saying, to justify the 60% reduction because it's already been taken into account. Well, I don't think there should be reduction for the zoning to begin with, and I'll point out to the court its own language in the prior decision in this matter why there was the connection between the zoning matter and our damage claim. But, no, I don't believe that's justified. I've cited four cases to Your Honors as to when this court reversed every time a 60% reduction. And, Your Honor, if you take a look at that, the attorney fee award again in Deja Vu, Nashville, at that point was $530,000. We didn't get a penny of damages, not a penny of damages. I enjoined permanently the Detroit zoning ordinance in this case, the sign ordinances applied to my clients, the practices and procedures of the Detroit City Council. So let's just describe 50% of the attorney fees to the declaratory and injunctive action and 50% to the $3 million I get to my clients. If you want to figure it that way, just down and dirty, let's figure it that way. That means my attorney fee award on getting $3 million from my clients is 6.3%. Why is that a reasonable compensation for a damage claim that they pushed me to until the night of trial, the night before trial? That's when we settled the case. It was the night before trial, everything we had to do. They took a complete scorched earth approach to this. I pointed out in the record, they said, yeah, they were going to stipulate to the third motion for summary tribute. Never did that. There are multiple references in this record, even in the Sam Riddle criminal trial, where Jim St. John testifies. In my representations as an officer of the court, from day one, we went in in front of Judge Cook and the city council members and said, we just want to settle this. We do not want to litigate with you. Totally turned us down. Totally turned us down. Made us do all of this work. Your Honor, there's one question that's never been asked in this case of me. Mr. Schaffer, did you take this on a contingency fee? I did not. I wasn't hourly on this case either. I was under a retainer agreement with my client that I lost my shirt because of the hours that I had to expend on this. This whole concept of are we making the lawyers rich, this is primarily my client's money because of money that they've already paid me. I would point out to this court that in 2014, this court came out with a decision in the Ohio Rights to Life case and said, the attorney fee award belongs to the client, not to the lawyers. My time's up, Your Honor. Good morning, Your Honor. Linda Fagans on behalf of the city of Detroit. That's Fagans, F-E-G-I-N-S. Your Honor, this was indeed a case where both sides vigorously fought in this case. But I think the issue in here is whether or not the judge and the magistrate abused their discretion. In these matters, the key is, no matter how violent the plaintiff or the prevailing party is, is whether or not the fees are reasonable and were reasonable expended. And just because you have a great result, I think the overall principle, if you look over all these cases or otherwise, we wouldn't analyze them or have a reduction, is was the work that was done reasonably expended? Just because you incurred something does not mean it was reasonable. Certainly, some portion. I don't know how you would determine what. But some portion of the fees in this case were incurred due to governmental inaction, correct? Even after guidance from the courts. Your Honor, if you're seeing governmental action in terms of the failure to, they said, on the application, that aspect. I can't go back and recite to you factually exactly the points in time. But there were years where the city council refused to act, and that necessitated more legal action and that sort of thing. Your Honor, the city did find us in violation. Excuse me, I'm speaking, ma'am. There is evidence in the record that the council did that, correct? They were found, we were found, one of the reasons why we were held liable, I think, is because one of the things was that there was some inaction on the application. Yes, that was found. And they had to seek relief in order to get the action, correct? Yes, Your Honor. Okay. Well, the fees are to some extent driven by the conduct of the party being sued as well as the conduct of the parties who were suing. Would you agree to that? I think both parts, as I say, started off with vigorously fought. I think both parts were very zealous about and took a hard stance on their positions. Yes, they did. I don't deny that. But what we're looking at here is the result that the magistrate and then Judge Tarnow, when he affirmed it, and the principle is the primary concern is whether attorney fees were reasonably expended here. In all the cases in this situation entirely, and as I said before, it doesn't mean just because they were incurred that they're tied to compensation. What basis is there for the district judge and the magistrate judge reducing the fees by 60 percent? Your Honor, I think when you look at the entire context of this case, I think because of the excessive hours in this case. Now, you know, even the excessive hours in this particular case that they determined as looking from it and whether or not you would have ruled that the same percentage or so forth, Your Honor, does not mean that they abused their discretion in this case. I think they also looked for the things that they asked for that they were not given, and rightfully so, that they were not even given any fees for. The fact that you would ask this for the court to grant fees for the representation of criminal proceedings and grand jury proceedings for Conyers and Riddle is something that the court rightly did, denied. But then that shouldn't weigh into the reduction by 60 percent. And I don't think it did. I think that was a separate, just did not award anything in there. So the one thing that you've mentioned, then, that justifies the 60 percent reduction, the only thing you've mentioned so far is the excessive hours. The excessive hours and the block billing. We raised the block billing issue with the fact that some of the things that we did, when we looked and did a review of what the plaintiff submitted, you could not necessarily determine whether or not and make a reasonable decision of whether or not these hours were reasonably expended. Now, there's no evidence that the court paid any attention to the chart we made. The chart and the plaintiff, the defense counsel may mention of, that it was just trying to grab a hold of all these extensive hours to make some reasonable sense out of it. But there's nothing in the record to say that the court relied on that chart. And so it wasn't an example of double billing. They were taking what they saw and trying to analyze, and it was difficult to do so. So it was nothing about deceptive measures and so forth, or any record that the court even relied upon that chart here. What did the court rely on? You know, there's case law that says the award has to be reviewable. There has to be enough specificity for it to be reviewable. What would you suggest we look to in the order that would make it sufficiently specific to a stand appellate review? First of all, one of them I mentioned is the Conyers and the Riddle. You think they should not have? No, no. I am talking about the 60 percent. Okay, the 60 percent. And, Your Honor, even though the cross-aboard reductions, you know, are an acceptable method. And so, and the 60 percent. Explain. Explain the 60 percent. I think the court looked at the record. It independently did, so it doesn't show that it did anything impermissible or relied on anything impermissible to reach a result. I cited to you in my brief where there's been one 60 percent, but that 60 percent, I admit, was because of a limited result plus excessive hours plus the fact that it was billing. But it has to be done. I cited to you in your Kentucky, I think, Judge Gibbons, you were upon that in the Kentucky case, it was a First Amendment case, 50 percent. Why? Excessive billing. Block billing in that particular case. That was justified. Fifty percent is not 60 percent, but what I'm saying is I'm trying to show you that it wasn't so far-fetched, and that was a First Amendment case. There were other cases that said that you can take into fact that what the court deemed, who had to look at this record, and why Judge, it's not the defense's fault that Judge Cook did not make the decision. Judge Whalen, when he was appointed, I think he had a year to go over these records and to go over the records and so forth. I forgot the year. I'm forgetting. So he had at least a year to review this case and go over the records, and so in this particular case. The other cases I've cited were 50 percent in there, and they indicated, I cited the St. Gobbin Auto, U.S. Incorporated case where there was 50 percent reduction for excessive billing and poor documentation, block billing and so forth. I cited to you. I don't find any reference. Perhaps I'm overlooking it, but I don't find any reference in the portion of the district court's order that deals with the 60 percent. I don't find a reference to block billing. No, that's what I'm saying. That was our, and now I'm saying that's another. I think the original question was, what would you point us to in the district court's order that evidences sufficient specificity? Not what you argued. Okay. I will argue that the court took a look and examined the records, and from its own independent analysis there, that it looked at the excessive number of hours and it cited the cases where it felt here. I think, and then, and there, just for the 60 percent, you're not talking about what cases it determined that they shouldn't even grant recovery here. And the court, it felt that they, it justified it that it felt that it could make an across-the-board reduction. It didn't have to be line by line and so forth as here. And they talk about the, he discussed the large fee application time and the, he discussed the large number of hours. I think in our brief here, we discussed the many, when you look at, when you analyze it on the case on the hours and so forth, we cited the different hours in which I don't even recall and not going to try to point to this. So I think that he, and the number of claims are indicative of the excessiveness of it. That is the general, that is the level of specificity of what the lower court, not the lower court, Judge Whalen did, Magistrate Whalen did in this particular matter here. And as far as the BZA, we argued that they should not get any hours for the BZA claim because based under the Supreme Court case of Webb, where they affirmed that a procedure that was not necessary and a proceeding that it was not a prerequisite for this suit. And in fact, our position is that the issues that they raised in this suit were in many ways separate and distinct from what they did in the BZA. That that wasn't, that therefore it shouldn't be, but the Judge Whalen felt that they should get credit for those hours. So he did not, indeed, he did not, he gave them, that was a part of the 60% reduction, whether we asked that it should be no hours for that. Judge Whalen rejected our argument of going, we went by case, by motion, by motion, line by line, trying to get certain deductions of another hours, and he just took the approach of the cross the board to address the whole issue of excessiveness in this particular case. Ms. Fagans, the court said, quote, the court is not required to engage in a line by line analysis of plaintiff counsel's 113 pages of fee requests. I don't know if that's true or not, because frankly, I don't know how the court determines the reasonableness of a fee without, quote unquote, going line by line and checking what's reasonable and what's not. But in any event, that's your job. If you're opposing fees, I would expect the defendant in these cases to do exactly what the court says it's not going to do, and so I guess I'm looping back around, what in the court's order, beyond the sort of conclusory statements, justifies, or forget justifies, permits appropriate appellate review of the reasonableness of a 60% reduction here. Your Honor, we did do a line by line, and that's how we approached it, and that's why. Did you urge a 60% reduction? No, we went. Of course not. No, we asked for, we asked for, this shouldn't be granted, this is how we did it. Okay, he asked for 350 hours. And you went on a lot of those. I beg your pardon? You prevailed on a lot of your requests, but now we're talking about the 60% at the end of the day. Where'd that come from? Your Honor, I guess in the reasonableness discretion of the judge in this particular case. Which we are mandated to review, correct? Yes, Your Honor. Did you ask for any percentage reduction, like 50% or 25% or 80%? My review of the record is no, we didn't. We might have asked, it was on one matter, 10% or something, and I can't even remember what it was. But no, we never put forth 60%. No, we didn't. You never argued a general percentage reduction? No, we did not. We went by hour by hour. You argued reasonableness of the total hours. And that certain things shouldn't even be recovered, like the Conyers or the BZA or the Jane Roe. The primary thrust of the city's position was taken care of, so to speak, or addressed or granted by the setting aside of the items that the district court ruled were not properly awarded. As far as the arguments you made in the district court, you pretty much fully prevailed on them, right? Yes. But you didn't want the full million dollars plus to be awarded. You were critiquing line by line various additional items, and instead of granting you the relief that you were requesting, the magistrate judge and the district judge said, well, we'll just take the total and reduce it by 60%. Well, the judge made that ruling. We went by, as I said, we attacked various motions, hours, and we argued generally excessiveness. We would take something and say, look how excessive 400 hours for one motion for summary judgment that it claimed that it used in the 2003. We made arguments in terms of things like that. That's how we, for the most part, argued. We agree. But we do agree that in terms of just like the court didn't grant our request that BZA get, that he shouldn't get any hours for the BZA, but he gave them at least 40% of whatever his hours were. The court, indeed, agreed with us and rightfully so regarding the idea of the 2003 lawsuit, which they stipulated that there would be no attorney fees. That was rightful. I think that the court, we should have won on that particular amount. It looks like from, I'm looking at the district court docket sheet. It looks like the magistrate judge held a hearing on that. Was there evidence taken at that hearing or was it just argument of the parties? It was argument of the parties. It was no evidentiary hearing. Everything you presented would be found in your written papers and in the transcript of the argument, correct? Yes. Okay. Yes. Where is this chart that, was it an exhibit? Which of those documents is it found in? Or which of, would it be, was it somehow shown at the argument before the magistrate judge or was it attached to your brief? I think it was attached to the brief. I don't recall. I'm going to be frank. I wasn't the one that argued, but I don't recall that, but I know it was attached to the brief and addressed very vigorously because, and we know the plaintiff objected to it and raised his objections to it in arguing against it. So unless there are any other questions, your red light has been on for a while. Thank you very much. Judge Gibbons, is it docket number 152? Yeah, I'm looking at 152 now. It must be one of these exhibits. And if there is one document that I would request this court and its staff to look at is 135, which is our reply where we point out what they've done in their charts, where they're double and triple dipping, one-time entry for $2,200. They seek a reduction of $5,500. But, your honors, I'd also call the court's attention to docket 148-5, page IDs 4496 and 4497. These are some of the entries that the judge excoriates me for the Conyers Riddle matter. And I have to explain something to this court. One of the central issues of the Conyers Riddle matter was what happened in the mediation here, your mediator. Because we disclosed before there was public disclosure of Conyers bribing of other people, we disclosed in that mediation the fact that she had solicited a bribe from us in the confidential mediation. So when the FBI contacted us after everything else had come out, they wanted to know, you're reading the newspaper now, you can just say, okay, you guys were, you know, there's a bribe solicitation and you're a strip club, nobody's going to believe you. Did you disclose it anyplace else before it got to the newspapers? Yes, I did. Where did you disclose it? In the confidential mediation that occurred at the order of this court, which led to, if you look at those time entries, your mediator sending me a nasty letter because my clients disclosed in the grand jury of a question to the assistant United States attorney, did you ever disclose that? So your mediator sends me a nasty letter, you have breached confidentiality, your honor, this is the honest to God truth, you can go get the letter. We don't know, we're not privy to this communication. Okay, but that's fine, I'm sorry, but look at the entry because then I had to go to the Conyers case and tell my client not to answer the question that forced Judge Averin Cohn to order him to answer the question, and they don't want me to get compensation for that. Thank you both for your argument. The case will be submitted, and would the clerk call the next case, please.